UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA PROVISIONS, LLC,<br><br>                    Plaintiff,<br><br>         vs.<br><br>THE HILLSHIRE BRANDS COMPANY,<br>UNLIMITED FREIGHT, INC., and<br>AFN, LLC,<br><br>                    Defendants. | 4:16-CV-04099-KES<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

Defendant The Hillshire Brands Company moves for an order to dismiss the complaint for failure to state a claim or, alternatively, moves to transfer venue to the Northern District of Iowa. Docket 4. Defendant Unlimited Freight, Inc., joins Hillshire's motion to transfer venue. Docket 11. Defendant AFN, LLC, moves to dismiss the complaint for failure to state a claim. Docket 9. Plaintiff, Dakota Provisions, LLC, resists these motions and requests leave to amend its complaint and add Marko Dimitrijevic, an individual, as a defendant. Docket 15.

For the following reasons, the court grants Dakota Provisions' motion to amend, denies the motions to dismiss, and denies the motion to transfer venue to the Northern District of Iowa.

## BACKGROUND

The facts as alleged in the proposed amended complaint[1] are as follows:

Hillshire suffered an explosion and fire at its processing facility located near Storm Lake, Iowa. As a result of this fire, Hillshire contacted Dakota Provisions to inquire as to whether Dakota Provisions could process turkeys for Hillshire. Dakota Provisions' turkey processing plant is located in Huron, South Dakota. Although Dakota Provisions generally only allows its member growers to utilize its facilities, it agreed to allow Hillshire to process turkeys at its plant.

Under the agreement, Hillshire was responsible for arranging transportation to deliver live turkeys from Hillshire's grower farms in Iowa and South Dakota to Dakota Provisions' processing plant. Due to patented technology and specialized equipment located at Dakota Provisions' processing plant, Hillshire also agreed to transport the live turkeys in a specially sized trailer with custom-built cages that conformed to the processing plant's requirements. Hillshire hired AFN to work as a brokerage company and to arrange for transportation of the live turkeys. AFN hired Unlimited Freight as a motor carrier to transport the turkeys to the processing plant on behalf of Hillshire. Unlimited Freight hired Marko Dimitrijevic as its driver.

---

[1] Docket 24 is a multi-purposed document. In filing Docket 24, it appears that Dakota Provisions intended to file a reply brief and three separate attachments (a highlighted copy of the amended complaint and a copy of two different complaints as exhibits). Instead, Dakota Provisions filed all of these documents in one docket entry. To avoid confusion, the court will refer to Dakota Provisions' reply brief (Docket 24 at 1-13) as "Docket 24" and the court will refer to Dakota Provisions' proposed amended complaint (Docket 24 at 14-18) as "Amended Complaint."

2

To haul Hillshire's turkeys to the Huron, South Dakota, processing plant, Dimitrijevic used a vehicle and specially sized trailer owned by Dakota Provision. Then, on or about April 12, 2014, at or near Sioux City, Iowa, Dimitrijevic was involved in an accident while speeding around a curve.[2] The crash resulted in the destruction of the live haul trailer and the 60 specially designed cages, each of which contained a live turkey at the time of the crash. Dakota Provisions' trailer also suffered significant damages. Dakota Provisions seeks damages totaling $108,468.48 plus interest.

Dakota Provisions, LLC, instituted this action in Beadle County, South Dakota in May 2016. Docket 1. The complaint was served on Hillshire on June 8, 2016. Hillshire removed the case with AFN's consent to this court under 28 U.S.C. § 1441, based on diversity of jurisdiction under 28 U.S.C. § 1332. *Id.* Unlimited Freight filed its answer to the complaint (Docket 5) and consented to removal on July 11, 2016. Docket 6. Dakota Provisions sought leave to amend its complaint to add additional counts and a new defendant on August 12, 2016. Docket 15.

## DISCUSSION

### I.   Motion to Amend the Complaint

Dakota Provisions moves to amend its complaint to make the following changes: (1) add counts of vicarious liability/agency, negligent hiring, conversion, and joint and several liability against Hillshire, AFN, and Unlimited

---

[2] Dimitrijevic was operating the vehicle at 55 miles per hour in a 35 mile per hour zone. He later pleaded guilty to speeding in violation of Iowa Code § 321.285.

3

Freight; (2) add Marko Dimitrijevic as an individual defendant; and (3) add counts of negligence and negligence per se against Dimitrijevic. Docket 15. Defendants AFN and Hillshire oppose the motion and argue that the proposed amendments are futile because the amendments fail to state a claim.[3] *See* Docket 19; Docket 21.  Defendant Unlimited Freight also opposes the motion but argues that the proposed amendment is futile because the court lacks personal jurisdiction over Dimitrijevic. Docket 23. As explained further below, the court will only consider defendants' arguments as to futility for Counts III, IV, and V of the proposed amended complaint.

## A. Legal Standard

The purpose of pleading under the federal rules "is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962) (rejecting the approach that, under the federal rules, "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome") (internal quotations omitted). Federal Rule of Civil Procedure 15(a) furthers this purpose by declaring that "[t]he Court should freely give leave [to amend] when justice so

---

[3] Hillshire also argues that the motion to amend the complaint should be denied due to Dakota Provisions' failure to comply with Local Rule 15.1, which requires a party to attach a highlighted or underlined copy of its proposed changes to its motion to amend. Docket 21. Failure to comply with the local rules can be a reason for denying a motion to amend. *Waldner v. N. Am. Truck & Trailer, Inc.*, 277 F.R.D. 401, 418 (D.S.D. 2011) (citing *United States v. Young*, No. 92–1348, 1992 WL 202469, at *1, tab. op., 972 F.2d 355 (8th Cir. Aug. 24, 1992)) (affirming the district court's denial of a motion to amend that did not conform to the local rules). Because Dakota Provisions eventually complied with the rule, *see* Amended Complaint at 14-18, the court will consider the merits of Dakota Provisions' motion to amend.

requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman*, 371 U.S. at 182.

"The Eighth Circuit Court of Appeals takes a 'liberal viewpoint towards leave to amend' and leave 'should normally be granted absent good reason for a denial.' "*Libertarian Party of S.D. v. Krebs*, 312 F.R.D. 523, 525 (D.S.D. 2016) (quoting *Popp Telcomm. v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000)). Leave to amend should be denied only if evidence exists such as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman*, 371 U.S. at 182). "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Becker v. Univ. of Neb.*, 191 F.3d 904, 908 (8th Cir. 1999) (citing *Gamma–10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1256 (8th Cir. 1994)).

**B. The Proposed Amended Complaint is Not Futile.**

"[I]t is common practice for a party to seek leave to amend in response to a motion to dismiss." *Ireland v. Anderson*, 2014 WL 3732014, at *2 (D.N.D. July 25, 2014) (citing *Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 869 (W.D.Mo. May 14, 2012)). In fact, the Eighth Circuit Court of Appeals has stated that a "motion to amend a complaint may moot a pending motion to dismiss." *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952,

5

956 (8th Cir. 2002); *see also Janis v. Nelson*, 2009 WL 4505933 (D.S.D. Nov. 24, 2009) (holding that the motion to dismiss was rendered moot after plaintiff filed an amended complaint). "An amendment is futile if 'the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.' " *Libertarian Party*, 312 F.R.D. at 525 (quoting *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this analysis, the court assumes that all facts asserted in the complaint are true and construes all reasonable inferences from those facts in a light most favorable to the complainant. *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 930 (8th Cir. 2013). A well-pleaded complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 555-56 (internal quotations omitted); *accord Johnson v. City of Shelby*, 135 S.Ct. 346, 346 (2014) (*per curiam*) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,'

6

Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

### 1. Count III: Vicarious Liability

Because this case is before the court on diversity jurisdiction, this court must look to state substantive law to define the general scope of an agency relationship and contours of vicarious liability. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). The parties presently do not dispute which state's laws should govern Dakota Provisions' vicarious liability claim, and the result appears to be the same under South Dakota and Iowa law. Therefore, the court will analyze the claim using South Dakota agency law.

"Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law." *Babinski Props. v. Union Ins. Co.*, 833 F. Supp. 2d 1145, 1150 (D.S.D. 2011). South Dakota defines an agency relationship as "the representation of one called the principal by another called the agent in dealing with third persons." SDCL § 59-1-1. "An agency relationship is either actual or ostensible." *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D.1982). The party claiming that an agency relationship exists has the burden to prove the existence of the relationship. *Id.* To determine whether an agency relationship exists, the court examines "the relations of the parties as they exist under their agreement or acts." *Id.*

"Actual agency exists when a principal and agent expressly agree to enter into an agency relationship." *A.P. & Sons Constr. v. Johnson*, 657 N.W.2d 292, 297 (S.D. 2003); *see also* SDCL § 59-1-4 ("Agency is actual when the principal appoints the agent."). To demonstrate the existence of an actual agency relationship, a party must show the following elements: "(1) manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking." *A.P. & Sons*, 657 N.W.2d at 297. Where an actual agency relationship exists, the principal may be held liable for the agent's negligent or wrongful acts. *See Kasselder*, 316 N.W.2d at 630 (concluding that the principal was liable for the acts of its agent).

Ostensible agency occurs "when by conduct or want of ordinary care the principal causes a third person to believe another, who is not actually appointed, to be his agent." SDCL § 59–1–5; *A.P. & Sons*, 657 N.W.2d at 297. To establish the existence of an ostensible agency relationship, the evidence should indicate that the principal, by its representations or actions, caused a third party to believe that a person was its agent. *Kasselder*, 316 N.W.2d at 630 (citations omitted) ("Ostensible agency for which a principal may be held liable must be traceable to the principal and cannot be established solely by the acts, declarations or conduct of an agent."). Where an ostensible agency relationship exists, "the principal is bound by the acts of his agent to only those persons who have 'in good faith, and without negligence, incurred a

8

liability or parted with value upon the faith thereof.' " *Dahl v. Sittner*, 429 N.W.2d 458, 462 (S.D. 1988) (quoting SDCL § 59-6-3).

Under South Dakota law, "[a] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as part of the transaction of such business; and for his willful omission to fulfill the obligation of the principal." SDCL § 59-6-9. Further, "[t]he ancient doctrine of *respondeat superior* is well established as 'holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.' " *Kirlin v. Halverson*, 758 N.W.2d 436, 444 (S.D. 2008) (quoting *Respondeat Superior*, *Black's Law Dictionary* (8th ed. 2004)). For situations involving subagents, the South Dakota State Legislature has determined that because "[a] subagent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for acts of the subagent." SDCL § 59-3-16. *But see Fanset v. Garden City State Bank*, 123 N.W. 686, 688 (S.D. 1909) (stating that "where an agent has authority to employ subagents, [the agent] will not be liable for the acts or omissions of the subagent, unless in the appointment of such subagent [the agent] is guilty of fraud or negligence, or co-operates with the subagent in such acts or omissions").

Here, the proposed amended complaint plausibly alleges that an agency relationship existed between Hillshire, AFN, and Unlimited Freight. *See, e.g.*, Amended Complaint at 17, ¶¶ 38-39. This agency relationship could be either

9

actual or ostensible. The agency relationship could be actual in that the proposed amended complaint alleges that Hillshire was required to use Dakota Provisions' vehicle, trailer, and cages to haul the turkeys to the processing plant and that the vehicle, trailer, and cages were picked up and actually used. *See* Amended Complaint at 15, ¶¶ 11-17. One inference from these allegations, is that a long-standing relationship existed between Hillshire, AFN, and Unlimited Freight, and that the parties had a contract that allowed Unlimited Freight and AFN to use the equipment on Hillshire's behalf. Another inference is that Hillshire entered into an emergency agreement with AFN and Unlimited Freight that gave them the actual authority to use Dakota Provisions' equipment on Hillshire's behalf.

The agency relationship between Hillshire, AFN, and Unlimited Freight could also be ostensible. The proposed amended complaint alleges that AFN and Unlimited Freight used Dakota Provisions' equipment to transport turkeys on Hillshire's behalf. *See* Amended Complaint at 15, ¶ 17. Thus, it would be reasonable for Dakota Provisions to believe that Hillshire was holding out AFN and Unlimited Freight as its agents in arranging for them to make use of Dakota Provisions' equipment.

Defendants Hillshire and AFN disagree with Dakota Provisions' styling of its claims and argue that all Dakota Provisions has done "is inject buzz works like 'agency' and 'control' [into the amended complaint] without any further factual enhancement." Docket 19 at 4-5. Hillshire and AFN may be correct that Dakota Provisions' amended complaint does not provide many concrete

10

allegations on the exact make-up of relationship between Hillshire, AFN, and Unlimited Freight. But the exact nature of the relationship is not presently at issue.[4] All this court needs to determine is whether the proposed amended complaint plausibly alleges an agency relationship that could give rise to Dakota Provisions' vicarious liability claim.

Under South Dakota statute and common law, the proposed amended complaint plausibly alleges facts that are sufficient to show that the defendants had an agency relationship and to impose vicarious liability among the defendants. First, the proposed amended complaint alleges that Dakota Provisions, as an innocent third party, can hold Hillshire, as the principal, liable for the destruction of Dakota Provisions' property by Hillshire's agents who were acting within the scope of their employment. Amended Complaint at 15, ¶¶ 11-17; *see also* SDCL § 59-6-9; *Kirlin*, 758 N.W.2d at 444; *Dahl*, 429 N.W.2d at 462. Second, the proposed amended complaint alleges the reasonable inference that even if AFN were not liable for Unlimited Freight's acts, Hillshire, as the principal, could still be held liable to Dakota Provisions for the acts of Unlimited Freight, a lawfully appointed subagent. Amended Complaint at 17, ¶ 39; *see also* SDCL § 59-3-16. Finally, the proposed amended complaint plausibly alleges that AFN could be held liable for Unlimited Freight's actions because either AFN was negligent in the

---

[4] Discovery may unearth additional information that shows whether an agency relationship existed between the defendants and, if so, what type of agency relationship the defendants had. Discovery may also show (as AFN argues) that AFN was an independent contractor and cannot be held vicariously liable for Dakota Provisions' loss. Such concerns, however, can be dealt with at the summary judgment stage.

appointment of Unlimited Freight or AFN cooperated in the negligent acts of Unlimited Freight. Amended Complaint at 17, ¶¶ 38-40; *see also Fanset*, 123 N.W. at 688.

Thus, after construing the facts and the reasonable inferences from those facts as true and in a light most favorable to Dakota Provisions, *see Rochling*, 725 F.3d at 930, the court finds that Dakota Provisions has pleaded sufficient facts to survive a motion to dismiss on its vicarious liability claim. Dakota Provisions' vicarious liability claim, therefore, is not futile.[5]

### 2. Count IV: Negligent Hiring

Count IV of the proposed amended complaint alleges that each of the defendants were negligent in their respective hiring roles. *See* Amended Complaint at 17, ¶¶ 42-48. It appears from the parties' responsive pleadings that the parties largely agree that South Dakota law governs Dakota Provisions' negligent hiring claim. Thus, the court will analyze Dakota Provisions' negligent hiring claim under South Dakota law.

" 'Generally, the law imposes no duty to prevent the misconduct of a third person.' " *Finkle v. Regency CSP Ventures Ltd. P'ship*, 27 F. Supp. 3d 996, 999 (D.S.D. 2014) (quoting *Walther v. KPKA Meadowlands Ltd. P'ship*, 581 N.W.2d 527, 531 (S.D. 1998)). "The South Dakota Supreme Court, however,

---

[5] This result would appear to be the same under Iowa law. *See, e.g.*, *McGraw v. Wachovia Sec., L.L.C.*, 756 F.Supp.2d 1053, 1080-83 (N.D. Iowa 2010) (discussing vicarious liability of principals for the acts of agents under Iowa law); *Benson v. Webster*, 593 N.W.2d 126, 130-31 (Iowa 1999) (describing Iowa agency law, and explaining circumstances where a principal can be held liable for the acts of an agent).

has 'acknowledged that employers can be held responsible for the negligent acts of their employees under a respondeat superior theory, and that negligent hiring and supervision of an employee may also give rise to liability.' " *Id.* (quoting *Rehm v. Lenz*, 547 N.W.2d 560, 566 (S.D.1996)). "Broadly stated, a negligent hiring claim suggests that *at the time an employee was hired*, it was negligent for an employer to engage the employee's services based on what the employer knew or should have known about the employee." *Kirlin*, 758 N.W.2d at 452 (emphasis in original).

The South Dakota Supreme Court has recognized that an employer's duty to conduct an investigation into an employee's background at the time the employee is hired depends largely on "the degree of contact the employee will have with the public in the prospective job." *Iverson v. NPC Int'l, Inc.*, 801 N.W.2d 275, 280 (S.D. 2011). " 'When an employee comes into minimum contact with the public or those in a special relationship with the employer, the employer need not perform a background investigation.' " *Id.* (quoting *McGuire v. Curry*, 766 N.W.2d 501, 507 (S.D. 2009)). "But, '[t]he opposite is true when the employee makes frequent contact with the public and those in a special relationship with the employer.' " *Id.* (quoting *McGuire*, 766 N.W.2d at 507).

A review of South Dakota Supreme Court decisions provides several examples of where the court has found that an employee's contact with the public, at the time the employee was hired, was not substantial enough to impose a duty on the employer to perform a background investigation. *See, e.g.*, *Iverson*, 801 N.W.2d at 279-80 (concluding that Pizza Hut, who hired a

13

behind the scenes utility worker, did not have a duty to conduct a background check on a non-managerial backroom employee); *McGuire*, 766 N.W.2d at 507 (concluding that the defendant-speedway, who hired a minor to deliver alcohol to the speedway's concession stands, did not have a duty to conduct a background check when hiring the minor due to the minor's limited contact with the public); *Kirlin*, 758 N.W.2d at 442-43 (concluding that a heating, ventilation and air conditioning company did not have a duty to conduct a background check when hiring its employee due to his limited contact with the public).

While the South Dakota Supreme Court has yet to decide a case to conclude that an employer had a duty to perform a background check on an employee at the time the employee was hired, the court's decision in *Kirlin* cites cases from other jurisdictions where such a duty was imposed. *See Kirlin*, 758 N.W.2d at 452-53 (citing cases). In *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907 (Minn. 1983), the Minnesota Supreme Court concluded that an employer, an apartment complex, had a duty to investigate the background of a prospective employee, an apartment manager, when the employee would have extensive contact with the public, i.e. apartment tenants. *Ponticas*, 331 N.W.2d at 913. Surrounding jurisdictions have adopted similar rules for negligent hiring. *See Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999) ("We now join those jurisdictions that have recognized a claim by an injured third party for negligent hiring and conclude that an employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may

pose a threat of injury to members of the public."); *Greening v. Sch. Dist. of Millard*, 393 N.W.2d 51, 57 (Neb. 1986) (quoting Restatement (Second) of Torts § 411 (1965)) (stating that "an employer 'is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care' in selecting the employee, even if such employee is an independent contractor.")).

The Colorado Supreme Court's decision in *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011 (Colo. 2006), is also helpful here. In *Raleigh*, Corey Weese was hired to work as a plumber for Performance Plumbing in 1996. *Raleigh*, 130 P.3d at 1013. When Weese applied he listed that he had no moving violations on his license but admitted that his license was under suspension. *Id.* at 1013-14. A review of Weese's background would have revealed several traffic infractions. *Id.* at 1014 n.3. In 1997, after being provided a work truck, Weese was involved in a car accident that severely injured the Raleighs, who were stopped in the right hand lane of a highway to hook a tow rope between their two vehicles. *Id.* at 1014. The Raleighs brought a negligent hiring claim alleging that Performance Pluming breached its duty to investigate Weeser's background before entrusting him with a company vehicle. *See id.*

Responding to the Raleighs' claim, the Colorado Supreme Court concluded that while the tort of negligent hiring can operate to hold an employer liable for intentional or negligent acts of an employee that are either within or outside of the scope of employment, this was not such a case. *Id.* at 1018. The court's decision was based on the fact that, at the time of the

accident, Weeser was commuting from work. *Id.* The court went on to note, however, that a different case would be presented "had the accident occurred when Weese was driving to a job site from a construction trailer or from a job site to a construction trailer as part of his work." *Id.*; *see also id.* n.8 (observing that "when driving is part of the job duties, the employer has a greater responsibility in making the hiring decision than simply asking the employee whether she or he possesses a valid driver's license").

The logic of the *Ponticas* and *Raleigh* courts are persuasive here. The proposed amended complaint alleges that at the time Hillshire hired AFN and Unlimited Freight, it failed to reasonably investigate AFN's and Unlimited Freight's backgrounds. Amended Complaint at 17, ¶ 45. The proposed amended complaint also alleges that at the time AFN hired Unlimited Freight, AFN failed to reasonably investigate the safety record, claims history, and insurance status of Unlimited Freight. *Id.* ¶ 43. The proposed amended complaint further alleges that at the time Unlimited Freight hired Dimitrijevic, Unlimited Freight failed to reasonably investigate Dimitrijevic's safety record, claims history, and insurance status. *Id.* ¶ 47.

Taken together, Dakota Provisions' allegations distinguish this case from the negligent hiring cases that were previously decided by the South Dakota Supreme Court. The proposed amended complaint pleads sufficient facts to suggest that at the time AFN, Unlimited Freight, and Dimitrijevic were hired, Hillshire, AFN, and Unlimited Freight were negligent in their respective hiring roles. Additionally, the respective employment agreements between Hillshire,

16

AFN, Unlimited Freight, and Dimitrijevic were made for the purpose of transporting turkeys from Hillshire's grower farms in Iowa and South Dakota to Dakota Provisions' processing plant in Huron, South Dakota. *See* Amended Complaint at 15, ¶¶ 9-17. Thus from the outset the respective hiring agreements put the defendants into extensive contact with the public because the contracts required the transportation of turkeys on public roads. That fact makes this case similar to *Ponticas*, 331 N.W.2d at 913, and the circumstances described by the court in *Raleigh*, 130 P.3d at 1018; *id.* n.8.

Because a necessary feature of the employment relationships here were that there would be frequent contact with the public in transporting the turkeys to Dakota Provisions' processing plant, Dakota Provisions has plausibly alleged that Hillshire, AFN, and Unlimited Freight had a duty to conduct a background check in their respective hiring roles. *See Iverson*, 801 N.W.2d at 280. Thus, after construing the facts and the reasonable inferences from those facts as true and in a light most favorable to Dakota Provisions, *see Rochling*, 725 F.3d at 930, the court finds that Dakota Provisions has pleaded sufficient facts to survive a motion to dismiss on its negligent hiring claim and that the negligent hiring claim is not futile.

### 3. Count V: Conversion

Count V of the proposed amended complaint alleges that Hillshire, AFN and Unlimited Freight converted Dakota Provisions' property, specifically Dakota Provisions' live haul trailer and turkey cages. Amended Complaint at 18, ¶¶ 49-52. Because the parties' responsive pleadings largely cite South

17

Dakota law to define conversion, the court will analyze Dakota Provisions'

conversion claim using South Dakota law.

" 'Conversion is the unauthorized exercise of control or dominion over

personal property in a way that repudiates an owner's right in the property or

in a manner inconsistent with such right.' " *Christensen v. Quinn*, 45 F. Supp.

3d 1043, 1097 (D.S.D. 2014) (quoting *First Am. Bank & Trust, N.A. v. Farmers*

*State Bank of Canton*, 756 N.W.2d 19, 31 (S.D. 2008)). "The tort of conversion

does not require the intent to deprive the true owner of his property rights." *W.*

*Consol. Co-Op v. Pew*, 795 N.W.2d 390, 398 (S.D. 2011). "Although South

Dakota specifies a damages calculation for conversion by statute, SDCL 21–3–

3, South Dakota largely follows the Restatement [(Second) of Torts] in defining

the scope of the tort itself." *Christensen*, 45 F. Supp. 3d at 1097.

According to the Restatement, courts may consider multiple factors in

determining whether an interference with an individual's property is serious

enough to require the actor to pay for the full value of a piece of property. *See*

Restatement (Second) of Torts § 222A(2)(a)-(f) (2016). This is because

determining the seriousness of an interference in possession "is nearly always

a question of degree, and no fixed line can be drawn." Restatement (Second) of

Torts § 222A, cmt. d.

The South Dakota Supreme Court has long recognized that conversion

can occur in multiple circumstances. *See Rapid Sewing Ctr., Inc. v. Sanders*,

112 N.W.2d 233, 236 (S.D. 1961). The first circumstance is where the original

possession of the property was wrongful. *Id.* The other circumstance is where

18

the original possession of the property was rightful. *Id.* In this second circumstance, the possession of the property can become wrongful through " 'a wrongful detention [of the property], or a wrongful use of the property, or the exercise of an unauthorized dominion over the property.' " *Id.* (quoting *Coleman v. Francis*, 129 A. 718, 719 (Conn. 1925)).

When evaluating conversion claims, it is telling that neither South Dakota case law nor the Restatement (Second) of Torts specify whether a defendant can only be liable for conversion where the defendant has actual or physical possession of the property. Thus, it is clear that the focus in an action for conversion is whether "the actor has exercised such dominion and control over the chattel, and has so seriously interfered with the other's right to control it, that in justice he should be required to buy the chattel." Restatement (Second) of Torts § 222A, cmt. d.; *see also W. Consol. Co-op*, 795 N.W.2d at 397 (quoting *Poggi v. Scott*, 139 P. 815, 816 (Cal. 1914) (" 'The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the *unwarranted* interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.' " (emphasis in original)).

Here, Dakota Provisions alleges that Hillshire, AFN, and Unlimited Freight all possessed Dakota Provisions' live haul trailer and turkey cages. Amended Complaint at 18, ¶¶ 50-51. Dakota Provisions also alleges that while Hillshire, AFN, and Unlimited Freight originally had rightful possession of trailer and turkey cages, that possession became wrongful once the trailer and

cages were destroyed. *See id.* Dakota Provisions further alleges that it is currently unable to obtain rightful possession of the trailer and cages. *Id.*, ¶ 51. A reasonable inference from these allegations is that because Hillshire, AFN, and Unlimited Freight had an agency relationship, they each had the ability to exercise control or dominion over Dakota Provisions' property and are each liable for the conversion of that property. Therefore, the court finds that Dakota Provisions has pleaded sufficient plausible facts to survive a motion to dismiss on its conversion claim. Dakota Provisions' claim for conversion is not futile.

### C. The Court Need Not Address Whether Marko Dimitrijevic is Subject to Personal Jurisdiction.

Defendant Unlimited Freight opposes Dakota Provisions' motion to amend the complaint arguing that the proposed amendment is futile because the court lacks personal jurisdiction over Marko Dimitrijevic. Docket 23. Dakota Provisions disagrees and argues that Unlimited Freight cannot assert the personal jurisdiction defense on behalf of Dimitrijevic. *See* Docket 24 at 10-12. The court agrees.

"The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Further, as the Eighth Circuit has long recognized, the "lack of jurisdiction over the person . . . is a personal defense which may be waived if not timely asserted or properly preserved thereafter." *Alger v. Hayes*, 452 F.2d 841, 842-43 (8th Cir.

20

1972); *see also Carlson v. Hyundai Motor Co.*, 164 F.3d 1160, 1163 (8th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(1)) (Defendant waived the defense of lack of personal jurisdiction by voluntarily appearing before the district court without raising the defense).

In support of its position that Unlimited Freight has standing to raise a personal jurisdiction challenge on behalf of Dimitrijevic in response to Dakota Provisions' motion to amend its complaint, Unlimited Freight cites *Sauer, Inc. v. Kanzaki Kokyukoki Manufacturing. Co.*, 853 F. Supp. 1106, 1110 (S.D. Iowa 1994). The situation presented in *Sauer*, however, is distinguishable from the situation presented here. First, in *Sauer*, Kanzaki itself moved to dismiss the complaint for a lack of personal jurisdiction. *Sauer*, 853 F. Supp. at 1108. Second, the defendant that Sauer sought to add through amending its complaint was a subsidiary of Kanzaki. *Id.* at 1109. Finally, the court in *Sauer*, only considered whether there would be personal jurisdiction over the subsidiary corporation after the court concluded that the parent corporation was not subject to personal jurisdiction in Iowa. *See id.* at 1109-10.

The defense of a lack of personal jurisdiction is a personal defense and can only be raised by the affected individual. *See, e.g.*, *Ins. Corp. of Ir.*, 456 U.S. at 702; *Alger*, 452 F.2d at 842-43. Thus, despite the tenuousness of Dimitrijevic's apparent contacts with South Dakota, Dimitrijevic may waive the defense of lack of personal jurisdiction and consent to suit in South Dakota. Further, the court declines to rule on the validity of Dimitrijevic's defense of lack of personal jurisdiction defense unless and until the defense is properly

21

presented. Therefore, the court finds that Unlimited Freight's futility argument fails and that Dakota Provisions' motion to amend the complaint is granted.

## II.    Motion to Transfer Venue

Hillshire moves to transfer venue to the Northern District of Iowa under 28 U.S.C. § 1391, 28 U.S.C. § 1404(a), and 28 U.S.C. § 1406(a). Docket 4. Unlimited Freight joins the motion to transfer venue. Docket 11. Dakota Provisions resists the motion contending (1) that venue in the District of South Dakota is proper and (2) that the District South Dakota is not an inconvenient forum for this litigation. Docket 17. The court will first address whether it should consider the motion to transfer venue under Section 1404(a) or under Section 1406(a). Then the court will address the merits of the transfer request.

### A. Motions to Transfer Venue under 28 U.S.C. § 1404(a) and under 28 U.S.C. § 1406(a).

A party may request for a court to transfer a case from its current judicial district to a different judicial district under either 28 U.S.C. § 1404(a) or § 1406(a). When deciding which of the two venue statutes to invoke, however, a party must first determine whether venue was laid in a proper district when the suit was filed. *See Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964) ("Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege.").

To determine whether venue is proper in a civil action, courts look to 28 U.S.C. § 1391. Under § 1391(b), venue is proper in three circumstances.

First, venue is proper in a district where "any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Second, venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). Third, if the suit can be filed in no other district, venue is proper in any district where "a defendant is subject to personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).

Here, the real dispute—although not raised by any of the defendants—is whether they are subject to personal jurisdiction in South Dakota. Instead, Hillshire and Unlimited Freight argue that under 28 U.S.C. § 1391, venue in South Dakota is improper and that a transfer is warranted under 28 U.S.C. § 1404(a) or § 1406(a). Docket 4-1 at 3-4; Docket 22 at 3-6. But determining whether the defendants are subject to personal jurisdiction in South Dakota also determines whether the motion to transfer venue would properly be brought under section 1404(a) or under section 1406(a).

To resolve the venue dispute here, the court need look no further than to 28 U.S.C. § 1391(c), which defines residency for venue purposes. Specifically, 28 U.S.C. § 1391(c)(2), provides the following:

> [A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

When Congress amended its venue statutes in 2011, it specifically made changes regarding the residence of entity defendants. *See* 14D Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3811.1 (4th ed.)
(hereafter Wright & Miller). As it relates to 28 U.S.C. § 1391(c)(2), those
amendments "change[d] the focus of the personal jurisdiction inquiry. Instead
of assessing whether the corporation is subject to personal jurisdiction 'at the
time the action is commenced,' now the inquiry is whether the corporation is
'subject to personal jurisdiction with respect to the civil action in question.' "
Wright & Miller, § 3811.1; *see also id.* (observing how this "change seems to
expand the definition of residence" for entity defendants).

The current version of 28 U.S.C. § 1391(c)(2) is determinative here.
Because none of the defendants have challenged the court's personal
jurisdiction over them, each defendant has waived that argument. Fed. R. Civ.
P. 12(h)(1); *Carlson*, 164 F.3d at 1163.[6] And because the defendants have
consented to personal jurisdiction in South Dakota, they have also consented
to venue in South Dakota as they are "subject to the court's personal
jurisdiction with respect to the civil action in question[.]" 28 U.S.C.
§ 1391(c)(2).[7] Thus, each of the defendants "reside" in South Dakota and are

---

[6] The court's decision here would not foreclose Dimitrijevic from challenging
the court's personal jurisdiction over him should he be served.

[7] Though few courts have addressed the exact issue posed here—whether
under the amended 28 U.S.C. § 1391(c)(2), a party consents to venue in a
district by failing to challenge the court's personal jurisdiction over the party—
the court's conclusion is not without support. Wright & Miller, § 3811.1
("Similarly, if an entity defendant waives its right to object to personal
jurisdiction, it has ipso facto consented to venue under this statute. It is, after
all, 'subject to personal jurisdiction with respect to the civil action in
question.' "); *see also Luverne Truck Equip. Inc. v. Worldwide Equip., Inc.*, 173 F.
Supp. 3d 915, 923 (D.S.D. 2016) (finding that the District of South Dakota was

properly subject to venue in South Dakota under 28 U.S.C. § 1391(b)(1). Therefore, 28 U.S.C. § 1406(a) does not apply and the court will only consider Hillshire's and Unlimited Freight's venue arguments under 28 U.S.C. § 1404(a).

### B. Transfer to Northern District of Iowa is not Appropriate.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir.1997). The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir.2010) (quoting *Terra Int'l*, 119 F.3d at 693). Instead, "district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In order to determine whether transfer to the Northern District of Iowa is appropriate here, the court must analyze both the convenience and interest of justice factors regarding the proposed transfer. *See id.* at 916.

---

a proper venue for the action because the court could exercise personal jurisdiction over Worldwide under 28 U.S.C. § 1391(c)(2)).

## 1. Convenience

When evaluating convenience considerations, the Eighth Circuit has utilized a case-by-case approach and considered: (1) the convenience of the parties; (2) the convenience of key witnesses; (3) the location of documentary evidence; (4) the location where the relevant conduct occurred; and (5) the applicability of each state's substantive law. *Terra Int'l*, 119 F.3d at 696. Courts typically refuse to change venue when doing so would merely shift the burden of inconvenience from one party to the other. *Id.* at 696-97.

Here the parties disagree as to which forum is most convenient. In the court's view, factors three and four are neutral. This is because documentary evidence will likely be located in South Dakota, Iowa, and other forums. And the relevant conduct allegedly occurred in both South Dakota and Iowa. Thus, these factors favor neither the plaintiff nor the defendants.

The court views the first factor as weighing in favor of Dakota Provisions because Dakota Provisions is the only party located in either South Dakota or Iowa. The fifth factor also weighs in favor of Dakota Provisions. As described previously, the parties do not appear to dispute that South Dakota law could govern Dakota Provisions' vicarious liability, negligent hiring, and conversion claims. Thus the law of South Dakota governs the majority of the substantive law at issue.

The most difficult factor to weigh is the second factor focusing on which forum will be the most convenient for potential witnesses. Hillshire and Unlimited Freight argue that most of the witnesses will be from Iowa, where the

26

accident occurred. Dakota Provisions, on the other hand, argues that the majority of the witnesses will actually be from South Dakota or from non-venue forums.  In *Terra*, the Eighth Circuit observed that " '[m]erely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue.' " *Terra Int'l*, 119 F.3d at 696-97 (quoting *Scheidt v. Klein*, 956 F.3d 963, 966 (10th Cir. 1992)). Because it appears that transferring venue here would only shift the inconvenience from the defendants to Dakota Provisions, the court finds that this factor alone is not sufficient to overcome Dakota Provisions' choice of South Dakota as the forum for this action. [8] *See id.* at 695 (observing that "federal courts give considerable deference to the plaintiff's choice of forum").

## 2.  Interests of Justice

When evaluating the "interest of justice," courts should consider: (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantages of having a local court determine questions of local law. *Id.* at 696.

Similar to the convenience factors above, many of these factors weigh in favor of Dakota Provisions. The court views factors two, six, and seven as weighing in Dakota Provisions' favor. Dakota Provisions has an interest in

---

[8] It is presently unclear exactly where the accident occurred in Iowa. If the accident occurred in Sioux City, Iowa, or in a location near Sioux City, Iowa, certain witnesses may be within the court's 100 mile subpoena power. *See* Fed. R. Civ. P. 45(c).

South Dakota being the forum to adjudicate its dispute. Further, because the parties do not seriously dispute the applicability of South Dakota law to the majority of Dakota Provisions' claims, there is an interest in having a South Dakota court determining the applicable law.

Factors one, three, four, and five appear to be neutral. It would make no difference for these factors whether this suit was heard by this court or by the Northern District of Iowa. Thus, because both the convenience and interests of justice factors weigh slightly in favor of Dakota Provisions, the court concludes that South Dakota is the most convenient forum for this litigation. Hillshire and Unlimited Freight have failed to meet their burden to prove that a transfer to the Northern District of Iowa is warranted under 28 U.S.C. § 1404(a). *See Terra Int'l*, 119 F.3d at 695.

## CONCLUSION

Dakota Provisions' amendments to the complaint are not futile and would survive a motion to dismiss. Defendant Unlimited Freight lacks standing to raise the defense of lack of personal jurisdiction on behalf of Dimitrijevic and the proposed amended complaint is not found to be futile on that basis. Because none of the defendants have challenged the court's assertion of personal jurisdiction over them, defendants have waived that argument and venue is proper before this court. Further, defendants have not overcome Dakota Provisions' interest in South Dakota as the forum for this litigation. A transfer to the Northern District of Iowa under 28 U.S.C. § 1404(a), therefore, is not warranted. Thus, it is

ORDERED that the Dakota Provisions' motion to amend the complaint and add a defendant (Docket 15) is granted.

IT IS FURTHER ORDERED that Hillshire's motion to dismiss (Docket 4) and AFN's motion to dismiss (Docket 9) are denied as moot.

IT IS FURTHER ORDERED that Hillshire's and Unlimited Freight's motion to transfer venue (Docket 4) is denied.

DATED December 27, 2016.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE